IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-861-D

| | |
|---|---|
| APRIL C. LEWIS o/b/o D.L.R., JR., *a minor*, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-30, -33] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. This action was filed by Plaintiff April C. Lewis on behalf of D.L.R., Jr., her minor son, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the determination that Claimant no longer qualifies for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Plaintiff's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

On July 14, 2006, Claimant's mother protectively filed on Claimant's behalf an application for SSI, alleging disability since April 15, 2004, Claimant's date of birth. (R. 246-49). On December 13, 2006, Claimant was determined to be disabled as of May 1, 2006. (R. 130, 162). A review of the disability decision was subsequently conducted, and on June 8, 2011 it was determined

that Claimant was no longer disabled as of June 1, 2011. (R. 130, 163-70). The decision was upheld upon reconsideration by a state-agency Disability Hearing Officer. (R. 130, 165, 179-204). An untimely request for hearing before an Administrative Law Judge ("ALJ") was filed, and after a determination that good cause existed for the untimely request, the ALJ held a hearing on June 3, 2013. (R. 125, 130, 145-61, 206-12). On August 14, 2013, the ALJ issued a decision finding Claimant's disability ended as of June 1, 2011 and he had not become disabled again since that date. (R. 130-44). The Appeals Council denied a request for review of the ALJ's decision. (R. 1-4). Plaintiff then filed a complaint on behalf of Claimant in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270

2

F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The Social Security regulations provide a three-step sequential evaluation process for the evaluation of continuing disability, unless skipping steps would lead to a more prompt finding of continued disability. 20 C.F.R. § 416.994a(b). First, the ALJ must determine whether there has been "medical improvement" in the impairment(s) the claimant had at the time of the most recent favorable determination. *Id.* § 416.994a(b)(1). The regulations define "medical improvement" as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable decision that [the claimant was] disabled or continued to be disabled." *Id.* § 416.994a(c). If there has been no medical improvement, it will be found that the claimant's disability continues, unless an exception applies. *Id.* § 416.994a(b)(1). If there has been medical improvement, the ALJ must next determine whether the claimant's impairment(s) still meets or equals the severity of the listed impairment that it met or equaled before. *Id.* § 416.994a(b)(2). Finally, "[i]f there has been medical improvement in the impairment(s) that we[re] considered at the time of [the] most recent favorable determination or decision, and if that impairment(s) no longer meets or equals the severity of the listed impairment that it met or equaled at that time, [the ALJ] will consider whether [the claimant is] disabled under the rules in §§ 416.924(c) and (d)[,] . . . consider[ing] all impairments [the claimant currently has], including any [the claimant] did not have

3

at the time of [the] most recent favorable determination or decision, or that [were not] consider[ed] at that time." *Id.* § 416.994a(b)(3).

In this case, Plaintiff alleges the ALJ erred in finding that Claimant demonstrated less than marked limitation in the domains of acquiring and using information and in attending and completing tasks. Pl.'s Mem. [DE-31] at 6-9.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ first determined medical improvement occurred as of June 1, 2011. (R. 134). Next, the ALJ determined that since June 1, 2011, Claimant's impairments of speech and language delay and attention deficit hyperactivity disorder ("ADHD"), which he had at the time of the prior decision, no longer functionally equaled the listings. (R. 134-43). Finally, the ALJ determined that Claimant did not have an impairment at the time of the prior decision that was not previously considered and has not subsequently developed any additional impairments. (R. 143). Accordingly, the ALJ concluded Claimant's disability ended as of June 1, 2011 and Claimant had not become disabled again since that date. (R. 143-44).

### B. Claimant's Testimony at the Administrative Hearing

Claimant was not represented by counsel at the hearing. (R. 147). The ALJ explained the right to representation to Claimant's mother and offered to continue the hearing to afford her an opportunity to retain counsel, which she declined. (R. 147-48). Claimant was 9 years old and in the third grade at the time of the administrative hearing. (R. 150). He was having "a little bit of problems" in school, such as listening to his teacher, and was taking Vyvanse for his ADHD every

4

day. (R. 151). Claimant receives special assistance with reading in school. (R. 152). He was involved in a fight with another student but was not suspended. *Id.* Outside of school, Claimant plays with his brothers and sisters for fun. (R. 153). He does some chores at home, such as taking out the trash and cleaning the floor. *Id.*

### C. April Lewis's Testimony at the Administrative Hearing

April Lewis (formerly April Wilson), Claimant's mother, indicated Claimant was having "a lot of trouble" learning in reading and math, was not hitting benchmarks, and was struggling to pay attention and stay on task. (R. 154). Claimant has an Individualized Education Program ("IEP") for education, but not for counseling, receives additional assistance with reading and math at school, and participates in an at-home after school program offering further assistance. (R. 154-55, 158). Claimant had been taking Vyvanse since August 2012 and had been assessed for counseling on April 22, 2013, but had not yet started treatment. (R. 155-57). Lewis had not tried alternative medications for Claimant, but felt he may need more medication coupled with intensive therapy. (R. 160).

Claimant has some behavioral difficulty in the classroom, such as being disruptive, distracting others, and taking items that do not belong to him. (R. 158). For example, if Claimant is unable to do his assigned work, then he will give up and become disruptive of the class. (R. 160). Claimant has no physical problems affecting his ability to run, jump, or grow and is able to dress and feed himself in an age-appropriate way. (R. 158). He has a problem with bed wetting, and the prescribed medication is not effective. (R. 158-59). Claimant gets along well with others, except for his 12-year-old sister, and Lewis's main concerns are that Claimant is falling behind and misbehaving in school. (R. 159).

5

## V. DISCUSSION

Plaintiff contends the ALJ erred in finding a less than marked limitation in the domain of acquiring and using information and in attending and completing tasks. Pl.'s Mem. [DE-31] at 6-9. If a minor's impairments do not meet or medically equal a listing, the ALJ must determine whether there is functional equivalency. 20 C.F.R. § 416.926a(a). In making this determination, the ALJ considers how a claimant functions in terms of six "domains," which are "broad areas of functioning intended to capture all of what a child can and cannot do." *Id.* § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) self-care; and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi). A finding of functional equivalence requires either "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(d). A "marked" limitation is defined, in relevant part, as follows:

> your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

*Id.* § 416.926a(e)(2)(i).

### A. Acquiring and Using Information

The domain of acquiring and using information considers how well a claimant acquires or learns information and how well the information learned is used. 20 C.F.R. § 416.926a(g). The regulations provide that school-age children "should be able to learn to read, write, and do math, and discuss history and science" and "should be able to use increasingly complex language (vocabulary

6

and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [their] own ideas, and by understanding and responding to the opinions of others." *Id.* § 416.926a(g)(2)(iv). Examples of some of the limitations considered in assessing this domain include a failure to "demonstrate understanding of words about space, size, or time; e.g., in/under, big/little, morning/night" or to "rhyme words or the sounds in words," "difficulty recalling important things you learned in school yesterday," "difficulty solving mathematics questions or computing arithmetic answers," and "talk[ing] only in short, simple sentences and hav[ing] difficulty explaining what you mean." *Id.* § 416.926a(g)(3).

The ALJ concluded that since June 1, 2011, Claimant has had less than marked limitation in the domain of acquiring and using information. (R. 138). The ALJ explained his decision as follows:

> The claimant's mother testified that the claimant was behind in reading and math at school. The claimant testified that he was in the 3rd grade and having some difficulties listening to his teachers at school. The claimant's IEP for January 2011 indicated that he would participate in regular [classes] for every subject and activity except for reading, math, and writing. In those subjects, he would receive extended time to complete assignments. His IEP noted that he had difficulty demonstrating knowledge verbally and in written form but he understood classroom instruction and could follow directions. His 1st grade teacher indicated that the claimant was not able to complete reading or writing assignments without help. In May 2011, his speech therapist noted that he had difficulty answering questions in the classroom. Yet, by December 2012, his speech therapist advised that the claimant's speech was 95% intelligible and that his communication was adequate to meet his needs. Moreover, it was noted that he had only moderate difficulty grasping information in the classroom. His IEP from May 2012 to January 2012 noted that [he] needed fewer reminders to control his actions and participated in class activities. He was also showing progress on his IEP academic goals.

*Id.*

Plaintiff does not take issue with the evidence cited by the ALJ, but rather argues that the

7

"record as a whole" supports the conclusion that Claimant has marked limitation in acquiring and using information. Pl.'s Mem. [DE-31] at 6-7. Specifically, Plaintiff relies on a December 2010 psychoeducational report completed by Hailey Krouse, an examining school psychologist (R. 343-58), IEP notes from January 2011 to January 2012 (R. 332, 344, 419), and a February 18, 2013 letter from Claimant's principal to his mother (R. 46). Pl.'s Mem. [DE-31] at 7-8. Plaintiff points out that in December 2010, Krouse noted Claimant's teachers reported he is working below grade level in all academic areas, he requires one-on-one or small group instruction to complete the majority of his assignments, he is easily distracted by his peers, and has a difficult time sitting and listening, and that Krouse reported Claimant is difficult to understand due to poor fluency and articulation, has a very short attention span and is frequently off-task, is easily distracted by objects around the room and needs to be redirected, has some difficulty understanding task directions, often needs them to be repeated, and is quick to give up on difficult tasks. *Id.* at 7 (citing (R. 343-58)). Plaintiff also notes Claimant's January 2011 to January 2012 IEP states he has difficulty demonstrating knowledge verbally and in written form due to his deficits in expressive language abilities, that his poor speech intelligibility inhibits him from being understood by his teachers and peers in the classroom, and that he is working well below grade level in math, using non-age appropriate processes of cluster reduction and stopping, and he scored in the low range for expressive language. *Id.* at 7-8 (citing (R. 332, 344, 419)). Finally, Plaintiff points out that Claimant's principal notified his mother on February 18, 2013 that Claimant is not progressing toward grade promotion and that an intervention plan was created to address his needs. *Id.* at 8 (citing (R. 46)).

The ALJ expressly considered both the December 2010 evaluation and the January 2011 to January 2012 IEP in the decision. (R. 135-36, 138). While the ALJ did not recite all the findings

8

Case 5:14-cv-00861-D Document 36 Filed 02/04/16 Page 8 of 14

in the report or IEP that were noted by Claimant, he was not required to do so. *See Russell v. Chater*, No. 94-2371, 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) (per curiam) (explaining that the Fourth Circuit has not "establish[ed] an inflexible rule requiring an exhaustive point-by-point discussion in all cases"). Furthermore, some of the findings cited by Plaintiff related to Claimant's distractability, attention span, or being off-task are relevant to the domain of attending and completing tasks rather acquiring and using information. *See* 20 C.F.R. § 416.926a(h) (the domain of attending and completing tasks relates to how well one is able to focus and maintain attention and how well one can begin, carry through, and complete activities).

In considering Claimant's ability to acquire and use information, the ALJ addressed the same types of deficiencies raised by Claimant related to his intelligibility, communication skills, and math and reading difficulties. (R. 138). The ALJ acknowledged that Claimant was behind in reading and math, that he had difficulty demonstrating knowledge verbally and in written form, but he understood classroom instruction and could follow directions, that he was not able to complete reading or writing assignments without help, and that he had difficulty answering questions in the classroom. (R. 138). However, the ALJ cited subsequent improvement in this area, including that Claimant's speech improved to 95% intelligibility such that his communication was adequate to meet his needs (R. 486), he demonstrated only moderate difficulty in his ability to grasp information in the classroom (R. 487), and he was progressing toward his IEP academic goals (R. 473). (R. 136, 138). The ALJ also relied on the opinions of the initial and reviewing Disability Determination Services ("DDS") consultants, including speech pathologists, doctors, and psychologists, who found Claimant had less than marked limitation in the domain of acquiring and using information. (R. 136, 558-87).

9

The February 18, 2013 letter regarding Claimant's failure to progress toward promotion was presented to the Appeals Council on Plaintiff's request for review and, therefore, was not addressed by the ALJ. (R. 46). As Defendant correctly notes, other records submitted to the Appeals Council indicate that Claimant was in fact promoted to 4th grade in the Fall of 2013.[1] *See, e.g.*, (R. 14). To be sure, there is evidence in the record that Claimant continued to have difficulties in verbal expression and demonstrating knowledge. (R. 474, 486). Yet, as is the case here, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," and the court may not re-weigh the evidence even where it might reach a different result. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). The ALJ applied the appropriate legal standard and cited substantial evidence in the record to support the determination that since June 1, 2011 Claimant has had less than marked limitation in the domain of acquiring and using information. Accordingly, the undersigned concludes Plaintiff's assertion of error is without merit.

## B.     Attending and Completing Tasks

The domain of attending and completing tasks considers how well a claimant is able to focus and maintain attention and can begin, carry through, and complete activities, including the pace at which activities are performed and the ease of changing activities. 20 C.F.R. § 416.926a(h). The

---

[1] Plaintiff submitted to the Appeals Council records from Claimant's 4th grade year, including documentation of several disciplinary actions taken against Claimant for behavioral problems, a subsequent IEP and IEP meeting notes indicating Claimant has a severe receptive and expressive language disorder, a psychoeducational reevaluation indicating Claimant's measured ability falls within the borderline range, and a speech language reevaluation concluding Claimant's language skills negatively impact his ability to communicate and access curriculum in the classroom setting. (R. 6-124). The Appeals Council determined this was new evidence about a later time, not affecting the ALJ's decision, and would require a new application for consideration. (R. 1). Plaintiff does not challenge the Appeals Council's determination.

regulations provide that school-age children "should be able to focus [their] attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments," "to concentrate on details and not make careless mistakes in [their] work (beyond what would be expected in other children your age who do not have impairments)," and "stay on task and in place when appropriate." *Id.* § 416.926a(h)(2)(iv). Examples of some of the limitations considered in this domain are whether a child is "easily startled, distracted, or overreactive to sounds, sights, movements, or touch" or "slow to focus on, or fail to complete activities of interest to [the child], e.g., games or art projects," "repeatedly become[s] sidetracked from [] activities or [] frequently interrupt[s] others," is "easily frustrated and give[s] up on tasks, including ones [the child is] capable of completing," and "require[s] extra supervision to keep [the child] engaged in an activity." *Id.* § 416.926a(h)(3).

The ALJ concluded that since June 1, 2011, Claimant has had less than marked limitation in the domain of attending and completing tasks. (R. 138). The ALJ explained his decision as follows:

> [C]laimant requires medication for his ADHD. He tested in the low-average range on tasks measuring attention, concentration, and reasoning. His teacher reported that he rushed through assignments and did not complete reading or writing tasks unless assisted. Yet, his school records show that he worked independently as much as possible and tried to complete his work. His latest IEP documented improved impulse control. Further, he was noted to follow directions easily during testing in October 2010. During a mental status examination in 2013, the claimant exhibited adequate memory and concentration.

(R. 139).

Plaintiff contends the ALJ failed to consider additional evidence relevant to Claimant's ability to remain focused and complete tasks. Pl.'s Mem. [DE-31] at 9. Plaintiff specifically cites

11

Krouse's December 2010 report noting that Claimant's teachers reported he requires one-on-one or small group instruction to complete the majority of his assignments, gets easily distracted by his peers, and has a difficult time sitting and listening. *Id.* (citing (R. 350)). Plaintiff also points out that during the December 2010 testing Claimant exhibited a very short attention span, was frequently off-task, was easily distracted by objects around the room, needed to be redirected to the task at hand on several occasions, had some difficulty understanding task directions and often needed them to be repeated, gave up quickly on difficult tasks, and had significant difficulty completing very basic math problems, even when given ample time. *Id.* (citing R. 350-51, 355).

The ALJ acknowledged Claimant's difficulties staying focused and completing tasks without assistance, expressly considering that during the December 2010 testing Claimant demonstrated a very short attention span, was easily distracted, and that he tested in the low-average range on tasks measuring attention and concentration. (R. 135-36, 139, 350, 352). However, the ALJ also cited evidence in the record demonstrating that Claimant's ability in this area subsequently improved. Specifically, the ALJ noted that during speech and language testing in October 2010 Claimant followed directions easily (R. 359), Claimant's May 2012 to January 2013 IEP indicated he had more control over his impulses, could raise his hand to wait for his turn, needed fewer reminders to control his actions, and participated in class activities (R. 473), a December 2012 note from a speech therapist indicated Claimant had only moderate difficulty attending to tasks in the classroom (R. 487), and a May 2013 clinical assessment indicated Claimant had adequate attention and concentration (R. 621). (R. 136, 139). The ALJ also relied on the opinions of the initial and reviewing DDS consultants who found Claimant had less than marked limitation in this domain. (R. 136, 558-87). As explained above, the fact that Plaintiff can point to favorable evidence in the

12

record does not render the ALJ's decision unsupported. *Hancock*, 667 F.3d at 476. The ALJ applied the appropriate legal standard and cited substantial evidence in the record to support the determination that since June 1, 2011 Claimant has had less than marked limitation in the domain of attending and completing tasks. Accordingly, the undersigned concludes Plaintiff's assertion of error is without merit.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-30] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-33] be ALLOWED, and the final decision of the Commissioner be upheld.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 18, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding**

district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

SUBMITTED, the 4th day of February 2016.

Robert B. Jones, Jr.
United States Magistrate Judge